The next matter, number 24-1244, Delma Terenzio et al. v. Francisco Urena et al. At this time, would counsel for the appellants please introduce themselves on the record to begin? Good afternoon, Your Honors. Chris Riley for the plaintiffs, the families of Mr. Terenzio, Mr. Sullivan, and Mr. Poulin, who are with us in the courtroom today. I'd like to start by discussing the clearly established issue. The parties agree that the matter is clearly established if a right was sufficiently clear that every reasonable official would know what they were doing violates that right. And this court has held you can do that without case law in the Eves v. LePage case and the Morero-Mendez v. Calixido-Rodriguez case or with case law. And here, what the defendants are arguing is that a reasonable official would not have known, and there's many allegations and I'm going to focus on this one, that taking elderly infirmed veterans who had contracted a contagious deadly disease and forcing them to sleep and live next to elderly infirmed veterans who had not contracted a deadly contagious disease would violate the constitutional rights of those patients at the Chelsea Soldier's Home. And we contend that that, even without prior case law, and I'll talk about the case law in a second, that a reasonable official knows they're not allowed to do that. The case law that we rely on to both prove that there was a consensus of persuasive case law finding a factually similar situation, which is the first way you can use case law to prove it, and also that there was a general standard identified in the decisional law, starts with this court's decision in 1976 in Harper v. Ayer. And in that case, this court said that if a plaintiff could establish a sufficient combination of helplessness on the part of deceased and a wanton callousness on the part of those caring for her, her line might cross from regular tort to constitutional. The defendants have argued, well, that's not a line. We might cross that line. Well, in 1978, the U.S. D.C. of Rhode Island gave us an example of what that line is. The Notton v. Bevilacqua case involved a case where a patient, voluntary patient, had a government institution. Can I just back up for one second? Sure. Why, in your view, assuming there is no further case law questioning Harper, since Harper let the claim go forward at a motion to dismiss stage, why is Harper itself not clearly establishing that the mere fact that you're in a place voluntarily isn't enough to show it, and that at the motion to dismiss, that the factual questions, that's going to have to be resolved probably at summary judgment or post-discovery or something like that, but that it's clear that if there's an allegations enough of helplessness, and I take it, do we know what the allegations were in Harper of helplessness vis-à-vis what these allegations are? Not from the Harper decision doesn't detail them, but Your Honor is exactly correct. That's our primary argument is we've got a First Circuit case from 1976. And then what do you make of the fact that Monaghan then describes Harper in ways that arguably cast some doubt of whether it would be right to read Harper the way you were suggesting it should be read? Monaghan and Deshani are completely different cases than this case. This case, Monaghan, the issue was private violence. It was essentially a state-created danger doctrine case. This is not a state-created danger doctrine case. In Monaghan, the issue was, well, should we have watched this voluntary committed person when we were traveling with them in a van, when they hop out of a van and run onto the road and get hit by a car by a nongovernment actor? So that is not – I guess defendants claim here the nongovernment actor is COVID-19, but your argument is that that's – You can't draw that inference at the motion to dismiss stage because you said the way they actually handled the pandemic was the problem. Correct. And that, I think, is not even just an allegation issue. That's akin to a malpractice action where a doctor says, well, I didn't kill the patient. The disease killed the patient that I didn't diagnose. COVID-19 is not a private violence or a private actor. And the harm here is we have alleged in the complaint the conduct or misconduct of the government actors in their individual capacity. That caused the harm. In this case, it was COVID-19 that caused the deaths. But that's how I would respond to that argument, Your Honor. I'm happy to keep talking about qualified immunity a little bit. If you have further questions, I know there are some other issues that arise. Well, the one thing in Monaghan, after discussing Harper in Monaghan itself, which I take it, yes, it's a state-created danger issue, but one of the grounds that the plaintiff in Monaghan was trying to rely on was drawing on Harper to say that a duty to protect had been triggered. And in the context of that discussion, it lays out Harper's helplessness standard and says it might possibly, and doesn't say that we're disavowing Harper or anything like that, so Harper remains good law, but then has this statement that says, Monaghan's complaint did not allege that he would have been barred from leaving the cottage upon request. He came to it on his own accord, and then says he was there for only six days. So I take it your read of Monaghan is that at most it's just suggesting that if the facts are not evidence enough of helplessness, then Harper's no good to you. But you don't take that as suggesting in a case like this there's any reason to think that Harper's not good law on these facts? I certainly don't think Harper's not good law on these facts. I think the context of Monaghan and that statement from Monaghan is important going back to this harm caused by the third party. I think the voluntariness, the allegations that there was some conversion from voluntary confinement to involuntary confinement is particular to Monaghan, but even if I didn't read it that way or thought a reasonable reader of these opinions on the fiction that anybody's reading any of these opinions who's being sued for these things, but assuming that a reasonable reader of it thought Monaghan's discussion of Harper is relevant even in a custody case, what do you have to say about what Monaghan's discussion of voluntariness as to Harper means for this case with respect to whether Harper clearly establishes that this complaint can go forward? Certainly, Your Honor, and I believe that quote arises in the context where they're saying this case falls somewhere between Youngberg and Deshani. And the allegations here, the issues that arise are, one, the length of the confinement, two, the nature of the acts that confine people, and I think, three, what I want to say is the ability of a person to leave an institution. So then could you just help me, what are the allegations in the complaint of, for lack of a better word, but to use Harper's word, helplessness, that support a plausible inference of helplessness such that Harper would be the governing precedent? We have, first we have people there for longer than Monaghan, Monaghan I think was a few days, six days maybe. The shortest period of time is 30 days, the longest period of time is several years, so we've got a longer period of time. The nature of the individuals we have in the complaint, elderly patients with dementia in an elderly care facility, that is different from someone who voluntarily checks them into a mental health facility. We also, the complaint alleges that they are restrained by the effects of COVID-19 and alleges that they were prohibited from their family members coming to them, understanding that that was something they might have had to do, but that is a restraint that's put on them. So I think those, and I believe that's all, but it's also in our brief, but those are the factors that we say if we need to show, if we need to have alleged some confinement, we've established that. And I would direct the court to the Bushey case out of the District of Maine where the court in that case said the complaint didn't have any allegations of confinement, which we do have here, but said in the context of a complaint at a Rule 12 motion, it was a reasonable, plausible inference to assume that confinement at the Rule 12 stage. Go ahead. I actually just wanted to move you, I think, specifically to the COVID-19 related death claims. I think the district court organized her opinion by sort of talking about the claims related to veterans dying from COVID-19, very serious claims, and then the other claims about the conditions in the home that you alleged were extremely upsetting and unsanitary. And with respect to the COVID-19 deaths, I think what the district court judge actually said, or at least the way I read her opinion, was that you just hadn't alleged enough to show that it was these defendants that were responsible for the deaths, which to me wasn't a clearly established question, right? It really had to do with are these defendants linked? And so I just wanted to give you a chance to talk about that. You said that there's three defendants who are being represented. Can you tell us why you think the district court got that wrong? And who do you think she did? Certainly, Your Honor. So she relied on the Maldonado case, and I think the defendants have cited the Welch v. Biddeford case. The allegations here are that these three defendants, Ms. Serena, Ms. Sutters, Ms. Poppy, had obligations to implement these policies and procedures. And specifically with respect to Ms. Poppy, the complaint alleges that she was responsible for establishing, implementing, amending, and updating policies and procedures with respect to the housing of residents, the layouts of the units, and infection control procedures. And then it alleges that these veterans were forced to, once they were infected with this deadly contagious disease, forced to live with and live next to and sleep next to other uninfected residents. Maldonado, the issue there and the lack of specificity on the allegations as to the mayor of the city, in Maldonado, the mayor issued an order, a regulation that said, we're going to be removing your pets from the town. They then hired a private contractor to effectuate this order. That's all the order said. And there weren't allegations that the mayor had a responsibility to determine how to get rid of these pets. This private company who they hire comes in and does atrocious things, kills pets and poisons them. And in that scenario, they said, well, those, the allegation is that the mayor issued this generic order and then someone else took it out in a conscious, shocking way. Here, our allegation is that the defendants, their conduct in exercising their duties was the same as the conscious shocking. What about as to the secretary and the other person, neither of whom, there are two who are kind of in a vicarious relationship. They're not at the home itself. And the appellees make the point that at least some of the allegations, including I think the ones you just described, it's implausible to attribute that directly to those actors. So what is in the complaint that constitutes an allegation that could suffice for their liability? And I think that the plausibility is the issue because the complaint does allege that with respect to Mr. Arena and Ms. Sutters, that their duties ensured ensuring the safety and well-being of the veterans and adopting and implementing protocols, practices. And are there allegations about their knowledge of what was going on on the ground? They're not, Your Honor. So the allegations are that they were responsible for implementing these procedures. Here's the procedures that were entered. What does that mean exactly? That's, I think, I mean, if you just take Maldonado as an example, presumably the mayor's got some general responsibility that people are safe and their pets aren't poisoned. I don't know. So in other words, is it enough just to say you're the secretary, you're responsible for everybody in the home being okay? That's enough to show it's plausible that you breached your clearly established constitutional obligation? Or is there some more detailed allegations concerning their knowledge of what was going on in the home that would suggest that they consciously disregarded or were deliberately indifferent to a substantial risk? I think it's a Rule 12 motion saying that someone had a duty and responsibility to do something, that they did it in a way that was a constitutional violation, that was in a conscious, shocking manner, and that that caused the harm. I think under Rule 12, that's enough. I think what I'm struggling with, though, counsel, is then there would be liability against these defendants for what happens in every state facility, in every circumstance, because it's true that they need to set policy for the state, but they're not actually the ones implementing it. And that's why I wanted you to address it. Can you point us to anything specific in your complaint to paragraph a sentence that really does anything other than just say, these defendants are responsible for setting protocols and policies in the common law? Well, there's the factual allegations about, you know, being moved from certain units and being... But how do these defendants have anything to do with... That's what I'm saying. They're not responsible for implementing anything at the facility level. Well, certainly, Ms. Poppe is. Yes. It's true, Scudder and Arena are not. Well, I guess that's a question of plausibility. Where's the factual allegation that would make it plausible, other than just saying that... I don't know what it means to say they're responsible. Well, I think the allegation is that they are responsible for it, that they were to implement those policies and procedures. It is not as if at the Rule 12... They would implement them? That's the allegation of the complaint you're on. I don't even know what that would mean. What does that mean? That would mean that there's a policy and procedure, and they're responsible for having that policy and procedure operational in the facility. Isn't that what the superintendent does? Isn't that exactly the role of the superintendent, rather than the secretary? I think it is, Your Honor. That is. But I think the issue here is that it is not as if the defendants have said, you know, here's the statute that outlines the duties of those higher-up people, and this does not fall within their duties. What we have is a complaint that has alleged that they were responsible for that, and that they engaged in these acts. But there's no allegation in the complaint suggesting that they were aware of the actual protocols that were happening in the soldiers' home during this time? Correct, and that goes... Correct, there are no such allegations? There are no allegations that... Marina and Scudder knew? No, let me rephrase it. The allegations is that they were the ones who were implementing, and I know you don't like that term, but they were the ones who were... They did have knowledge because they were supposed to...  Implement these. And, Your Honor, that does go to this issue about, you know, the Rule 12 stage of these motions. You know, this is not Holyoke where we have the report, and I think that's why we're focused on this being a Rule 12 issue, which we think we've adequately pledged a constitutional violation, and we ask that the Court reverse the decision and remand it to the District Court. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning, Your Honors. May it please the Court? My name is Austin Anderson, and I represent the defendants Mary Lou Sutters and Cheryl Poppe. This morning I'll be presenting argument on behalf of both my clients and Francisco Urena. I would like to start by acknowledging the tragic facts that underlie this case. We do not in any way minimize the very real loss that these families suffered. Each of the hundreds of thousands of deaths in the first year of the COVID pandemic were a tragedy, whether they occurred at a soldier's home, a private nursing home, or anywhere else in the Commonwealth. But the fact that we have a tragedy here does not mean that the public servants who are named as defendants in this case are individually liable for violating the Constitution. As this Court said in Adler Depy, which arose out of the COVID response at a different soldier's home, it would be inhumane not to feel a sense of outrage over the situation or a sense of deep sympathy for those who passed away. But ours is a question of federal law, not one of sympathy. What was Poppe's role at the facility? She was the supervisor of the facility, so she oversaw the operation. So she was on site? Yes. What's insufficient about the allegations as to her? They are insufficient because they do not name her. She's not one of the defendants? The allegations in the complaint do not name Poppe specifically. They name the defendants. Some of the allegations name the defendants collectively. For the reasons we explained, that's not a plausible reading of the complaint because it assumes... But why not as to her? In other words, it just seems a little strange if I say two people, one of whom the allegations... Two people did something. The allegations are completely plausible as to one of them and implausible as to the other. Why would I read the complaint to say, oh, well, you're not making plausible allegations about either? It just doesn't seem like a very rule eight kind of way to be reading a complaint. So there's a threshold problem here in that even the allegations... Let me ask you a different way. Just so I get straight what I'm trying to ask you. If it had named Poppe, would the allegations be insufficient? They would be insufficient to state a claim for other reasons. Not the reason that the district court relied on. And the reasons there would have to do with there's no clearly established right or something like that? Would there be a causation problem if it had named Poppe? Yes, there would be a causation problem. Putting aside the district court's point about the problem from the generic use of defendants, what is the causation problem as to Poppe with these allegations? I will answer that question, but just very briefly I want to point out that not every allegation in the complaint refers to all the defendants collectively. Some of them are just impassive voice and no attribution whatsoever. But to answer your question, the complaint is frank about this. What is being alleged here is a failure to protect the veterans from COVID-19. This is not a direct state action causing harm. This has to fall under the rubric of either a special... But the acts or omissions included co-mingling. If it named Poppe, I read it, if it named Poppe, these allegations would be saying Poppe was responsible for implementing the policies and one of the things they failed to do was to separate, instead they co-mingled. Is that a fair reading of the complaint? No, Your Honor, for two reasons. First of all, I think we're right to focus on that allegation about placing the beds two feet apart. That's the strongest allegation they have in this complaint. First problem is that this is one of the passive voice allegations. They quote a third party who says, they took them from six feet and gave them two feet. It doesn't say who that speaker meant by they and so the plaintiffs can't attempt to rewrite their pleading on appeal saying what we really meant was each of these defendants individually. We're talking about, we don't know what the speaker meant when they said they. That's the first problem. The second problem is that if you read these allegations in context, what they say is the home segregated and quarantined sick residents in the one west ward and that is what resulted in the overcrowding of the other two wards. So there is no allegation in the complaint that anybody put sick residents next to healthy residents. That is not in the complaint. What we have here is a situation where qualified immunity should apply with the most force. We have state officials dealing with the unprecedented pandemic first months, what this court in Abu Dhabi called the circumstances of that first month and they're forced to make hard decisions based on the constraints that they're dealing with at the time. They know they have to segregate residents so they do so. The trade off is that results in overcrowding for other people. These are the kinds of hard decisions in novel circumstances that don't give rise to constitutional liability. But doesn't that depend on what alternatives were available to them at the time? I mean, how can we decide on a motion to dismiss but this is a hard decision, therefore can't support liability? Because there is no allegation that there were other options open to them. We accept the facts as alleged in the complaint is true, but there is no allegation that they had other options they could have avoided this. Again, even if there had been such an allegation, what is alleged is not that they put sick residents next to healthy residents. It's that they quarantined sick residents and that resulted in overcrowding for the rest of the population. I think that does not come close to stating an intentional harm or direct harm by a government actor. Counsel, I think that's not how the district court read the complaint. I don't have the complaint in front of me, though. I did read it and reading the entire complaint with the rules of civil procedure in mind, which is that we have to read it liberally, it certainly names the superintendent by saying that the superintendent is the person, the chief administrator of the facility, the person who's responsible. The buck stops with that person, it seems to me, in terms of what's happening in that facility. And then as the district court described, the complaint alleges that it was the defendants who put the veterans in vulnerable, unsafe situations, that they contracted the disease in the first place. So I'm just trying to, I'm struggling to understand your argument that somehow that's not enough to show that at least the superintendent wasn't, you know, based on the allegations in the complaint, there's not enough to conclude that she was responsible for what was happening on a daily basis in the facility where she's the chief administrator. I mean, who then would be responsible if it weren't her? So, to state a 1983 claim, you need personal conduct by each individual defendant. It's not enough to say that she was. But if she's the person in charge of what is happening in the facility on a daily basis, how is that not direct responsibility? Well, I think you would need an allegation that she is the one who either ordered or oversaw putting the beds two feet apart. Wouldn't it just be enough if she's aware it's happening and she's deliberately indifferent to it? I don't think so, Your Honor, no. Why is that? Because you still don't... There's a substantial risk of harm from this protocol. She's aware it's happening and she's deliberately indifferent to it occurring. Wouldn't that be enough? So, now we're getting into the problem, the threshold legal problem, which is that there is no constitutional... I understand that, but you're right to be walking us through an antecedent question which has to do with even if there were a clearly established constitutional problem, these allegations are insufficient even as to poppy. That's what we're trying to talk to you about now because we don't have to decide whether there was a clearly established problem if you're right about that. So, I don't want to quite get to that other issue yet before we wrap this point up. So, this is... Monahan is instructive on this point. Monahan says, taking actions that increase the risk that somebody comes to harm through another means does not implicate the due process clause until you cross the bright line where you have custody or state-created danger. So, simply being aware of circumstances or failing to correct circumstances that might increase the risk that somebody suffers harm is not sufficient to state a substantive due process violation. Even if you're the person responsible for the protocols that could alleviate that from happening and you don't do anything about it? Without a constitutional duty, it is not a constitutional violation to... Okay. Then we just are getting... Then it turns out the allegations are sufficient on causation and then we just get to the question of whether there's a constitutional duty or not. I don't want to get stuck on this point because the Court doesn't need to agree with us on the causation question, but the... There would be... We would see this come up in the case law all the time. If there were... If any time that a state actor failed to mitigate a danger to somebody else, even if it falls within their official responsibilities, if that gave rise to a constitutional violation or if that could be considered causing a constitutional deprivation, that would be all over the place in the case law. We don't see it. Plaintiffs haven't cited any cases. And the reason for that is because the causation analysis needs to be direct. The classic substantive due process violation is an intentional harmful act. Here we're talking about something different. I thought deliberate indifference was the standard, potentially. No? This case... I mean, sorry. This Court has found deliberate indifference sufficient to satisfy substantive due process exactly one time in the Irish v. Fowler case. And this is... The cases are nothing alike. There you had affirmative acts that created a danger to the plaintiff. Here we're talking about a failure to do something. There's no affirmative act. Again, we are assuming that the complaint actually alleged that Ms. Poppe was aware of these conditions. What was the substantive due process claim in Harper itself? I forget. That was a claim based on a failure to prevent a mental health patient from committing suicide. And so isn't that quite analogous? Well, I'm sorry. First of all, Harper was an Eighth Amendment case, not a substantive due process case. Harper could theoretically stand for the proposition that a helpless resident of a state institution might acquire constitutional rights. Monaghan, Your Honor, is correct. Monaghan cast significant doubt on that proposition when it characterized Harper as a... Just so I'm understanding, this is the conjunction of two different strands you're saying, and that's what makes maybe this not clear, which is they're involuntarily held. I know you dispute that, but if under Harper we write it to say yes, Harper then doesn't say what the standard is for a substantive due process claim based on such a person. And to then conclude that it's clearly established that a failure to protect, as opposed to doing something affirmative to the person, is enough to trigger substantive due process. So therefore that's what's not clearly established, that the failure to protect a person who's in custody is itself a substantive due process violation. Is that the idea? That's certainly part of it. It would require a leap to go from Harper and say maybe you have an Eighth Amendment claim if they failed to prevent your suicide, to a nursing home and say you have an affirmative obligation to implement policies to protect against a disease. But I think the more fundamental problem... Is that because Harper was brought as an Eighth Amendment claim, not as a substantive due process? Yes. So it was. We can... Even assuming that Harper stands for the proposition they say it is, and assuming that that proposition is clearly established, that's only half of the battle on the clearly established front. The analysis focuses on whether these defendants in these specific circumstances were on notice. So the most they argue, the plaintiffs argue here, is that helpless residents of a state institution might have due process rights. We don't know what constitutes helplessness. We don't know when those arise. But even assuming that they do, there is nothing in the case law, there's nothing in the briefing that would put these defendants on notice that failure to appropriately deal with an infectious disease constitutes a substantive due process violation. And how about... So I take it just so I'm straight on this, you would say the case might be different if there were allegations that Poppy put the two beds right next to each other or ordered co-mingling. But you're saying on this record the allegation is simply that she was responsible for what happened in the home. Insofar as that happened, there's no allegation that she ordered it to happen. She at most failed to stop it from happening. Is that the idea? I think that's an important distinction, yes. There's a second distinction in that beyond not attributing this to Poppy individually, which is required under a 1983 claim. This is not a clearly established question. This is to state a 1983 claim you need personal conduct by the defendant. We also know from the complaint that the reason the beds were put two feet together is because they needed to quarantine the sick residents. These were healthy residents. That goes to the merits of the order itself, but I thought you were making a point, just as a legal matter, that it matters whether the allegations alleging she was responsible for that happening. Now they do say that in the allegations that she implemented the protocols, correct? She was responsible for implementing them. Implementing protocols generally. So why wouldn't it be a fair inference that the protocols that then resulted were at her implementation? It just says that 12B-6. It doesn't mean that that will turn out to be true. Right, but they could have alleged that and they did not. Could have alleged what? That Cheryl Poppy was aware of and responsible for the beds being placed two feet apart. That allegation is not on the complaint. Why wouldn't it be fair in a complaint that's alleging that happened, that she's responsible for all the protocols and implementing them, that what they're alleging is that that was one of the protocols that she was responsible for implementing that result? That might be sufficient for a tort case under a supervisory liability standard, but it is not. A 1983 claim requires more because you need personal conduct that leads inexorably to the constitutional violation. I see that I'm out of time unless there are further questions. I'm happy to stop. Thank you.